FILED

2007 Mar-14  AM 09:24
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | | |
|---|---|---|
| **AARON SAXTON, et al.,** | } | |
| | } | |
| **Plaintiffs,** | } | |
| | } | |
| **v.** | } | **Case No.: 2:04-CV-2579-RDP** |
| | } | |
| **TRACY YOUNG, an individual, et al.,** | } | |
| | } | |
| **Defendants.** | } | |

## <u>MEMORANDUM OPINION</u>

## I.    INTRODUCTION

Currently before the court is Defendants Tracy Young, Title Max Management, Inc., Title Max of Alabama, Inc., Title Max of Georgia, Inc., and Title Max of South Carolina, Inc.'s (referred to collectively as "Title Max" or "Defendants") Revised Motion for Summary Judgment or Partial Summary Judgment (Doc. # 68), filed on November 15, 2006.  The motion has been fully briefed by the parties and came under submission on December 18, 2006.  After a careful review of the record and the arguments made by all parties, the court finds the motion is due to be granted in that the court will dismiss the claims against the store managers, Defendants' violations were not willful, some of Plaintiffs' claims are barred by the applicable statute of limitations, and damages for Plaintiffs' remaining claims should be calculated using the "fluctuating workweek method."  The claims of Plaintiffs Tonya Loyd, Ruby Smith, and Christy Courtney for unpaid overtime under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §201 *et seq*., remain, and the case is due to be set for a pretrial and trial accordingly on the claims of these Plaintiffs.

## II.    PROCEDURAL HISTORY

On August 27, 2004, thirty-nine Plaintiffs[1] filed suit seeking compensation for unpaid overtime, liquidated damages, prejudgment interest, attorneys' fees, and costs and seeking certification as a collective action under the On December 30, 2004, the court dismissed Defendant Title Max of Tennessee, Inc. from the suit, as the court found it lacked personal jurisdiction over this Defendant.

Plaintiffs sought to certify only the assistant manager Plaintiffs as a class by motion filed on March 24, 2006.  (Doc. # 42).  On May 4, 2006, the court denied collective action certification as to the assistant manager Plaintiffs.  (Doc. # 48).

On August 31, 2006, the court denied Defendants' First Motion for Dismissal Pursuant to Federal Rule of Civil Procedure 41(b) (lack of prosecution).  (Doc. # 56).  On November 1, 2006, after holding a hearing on the motions on October 6 ,2006, the Court granted in part Defendants' Second and Third Motions for Dismissal Pursuant to Federal Rule of Civil Procedure 41(b) (Docs. # 59 & 65) in regard to eleven Plaintiffs (*i.e.*, Brown, Coney, Everett, Fritz, Hopper, Maxwell, Motley, Parks, Silas, Simmons, and Welch) for failure to timely respond to discovery requests and failure to effectively prosecute their cases.[2]  (Doc. # 67).  Finally, on January 2, 2007, the court found

---

[1]Carola Chappell was dismissed at her request on September 8, 2004 (Doc. # 8). Additionally, three individuals (Jesse McKinnon, Vernon Shaw, and Charles Fuller) are attempting to participate in this action but are not parties to this lawsuit.  *See infra*.

[2]The court notes, as it did in its November 1st order, that the outcome of Defendants' motion—dismissal of the above-referenced claims—does not reflect the efforts of Plaintiffs' counsel in this case, which have been nothing less than a zealous representation of his clients within the bounds of legal and ethical propriety.  Throughout the course of this litigation, the court became aware that the above-named individual Plaintiffs were unresponsive and uncooperative not only in response to Defendants' discovery requests, but also in response to the attempts made by their own counsel to contact them regarding the case.  Therefore, the dismissal for failure to prosecute under

Defendant's Fourth Motion to Dismiss to be moot, as the remaining Plaintiffs finally submitted the missing documentation requested by Defendants, as ordered by the court.

## III.  STATEMENT OF FACTS

Title Max is a collection of approximately one-hundred and fifty corporations located in five states—Alabama, Georgia, Tennessee, Missouri, and South Carolina—involved in the business of making loans using automobile titles as collateral.  (Doc. # 69 Ex. A 9–15).  Defendant Tracy Young is the sole shareholder of all Title Max corporations and oversees the operation of all Title Max corporations as President and CEO.  (Doc. # 69 Ex. A 14).  For management purposes, Title Max stores are divided into eight regions with the regions divided into a total of thirty-two districts.  (Doc. # 69 Ex. A 20–21).  Each store has a store manager who reports to their respective District Manager, each district has a District Manager who reports to the Regional Manager for the region, and each region has a Regional Manager who reports directly to Defendant Young; both District Managers and Regional Managers are employed by a corporation known as Title Max Management, Inc.  (Doc. # 69 Ex. A 16–21).  Title Max assistant managers are hourly employees who operate under the guidance of the store manager. (Doc. # 69 Ex. A 23, 36; Doc. # 69 Ex. D 44–45; Doc. # 69 Ex. E 22).

There are two groups of Plaintiffs—one group consisting of current or former store managers,[3] and one group consisting of current or former assistant managers.[4]  All Plaintiffs claim

Rule 41(b) is a result of the failure of individual Plaintiffs to prosecute and participate in this case, and should not reflect upon Plaintiffs' counsel.

[3]There are nineteen store manager Plaintiffs: Walter Cain, Jeffrey Carter, Piper Davis, June Dorminey, Alonzo Duke, Jonathan Edwards, Melissa Fullmore, James Howard, Janice Levine, Kesia Lewis, Heath Mangum, Jimmy Murphree, Bradford Neal, Brian Phillips, George Sanders, Aaron Saxton, Mike Spane, Ronald Sprouse, and Christine Williams (Doc. # 1; Doc. # 37; Doc. # 68 Ex.

they were nonexempt employees under the FLSA and entitled to overtime compensation for hours worked in excess of forty in one week. (Doc. # 1). Plaintiffs further claim that Defendants' violation of the FLSA was willful as defined in 29 U.S.C. § 255(a), and, therefore, Plaintiffs' statute of limitations to bring claims is extended to three years under the statute. Finally, Plaintiffs argue that any damages they may be awarded for uncompensated overtime should be calculated by the regular overtime method, as opposed to the fluctuating workweek method as set out in 29 C.F.R. § 778.114.

On August 31, 2005, Plaintiffs filed a document entitled "Damage Summary," which was a supplement to Plaintiffs' earlier disclosure of expert witnesses and their reports. (Doc. # 37). Plaintiffs' Damages Summary set forth calculations of the damage claims of seventeen assistant manager Plaintiffs and three non-parties (Charles Fuller, Jesse McKinnon,[5] and Vernon Shaw[6]) and provides specific information in regard to how each Plaintiff was paid. (Doc. # 37).

Defendants respond that at all times pertinent to this lawsuit, Title Max policy required that work be scheduled such that non-exempt Title Max employees would not be required to work in

---

3 ¶ 7).

[4]The assistant manager Plaintiffs remaining after the various motions to dismiss discussed above are: Christy Courtney, Robert Hawkins, Adam Latham, Tonya Loyd, Cody Oxley, Ruby Smith, and Mike Spurlin, Jr. (Doc. # 1; Doc. # 68 Ex. 3 ¶¶ 8, 15; Doc. # 37; Doc. # 67).

[5]Charles Fuller and Jesse McKinnon were not named as plaintiffs in the complaint nor were they added as plaintiffs by any subsequent amended or supplemental pleading. (Doc. # 1). Their names first appeared in Plaintiffs' Damage Summary. (Doc. # 37).

[6]Mr. Shaw stated he was unaware of this lawsuit until after it was filed. (Doc. # 68 Ex. 4 at 47–49). Later, on August 28, 2004, he signed a "Consent to Join Collective Action," which bears no case number and which has never been filed in this case. (Doc. # 68 Ex. 4 at 70–74). As the court denied certification of any class in this case, there is a substantial question as to whether his consent, even if filed, would have been effective. (Doc. # 48).

excess of forty hours a week.  (Doc. # 68 Ex. 3 ¶ 12, Attachment 2).  Defendants assert that this policy was enforced by the vast majority of, if not all, store managers.  (Doc. # 68 Ex. 5). Defendants' labor policy, as reflected in emailed "Tips of the Day," repeatedly advised store managers that assistant managers were to work no more than forty hours weekly. (Doc. # 68 Ex. 3 ¶ 12 and Attachment 2).  Beginning in August 2003, Defendants implemented more stringent time requirements and work hour regulations of employees.  (Doc. # 68 Ex. 3 ¶ 13).  In January 2004, a new method of time keeping and reporting was implemented.  (Doc. # 68 Ex. 3 ¶ 13).  Also in January 2004, the Defendants' payroll system converted from semi-monthly pay periods to bi-weekly periods. (Doc. # 68 Ex. 3 ¶ 13).

The U.S. Department of Labor ("DOL") has now investigated Defendants' labor policies on three occasions, and each time DOL has declined to test their wage and hour theories in regard to store managers. (Doc. # 68 Ex. 17 at 13–17; Doc. # 68 Ex. 7).  Additionally, on these occasions, DOL has not made any finding related to assistant managers.  (Doc. # 68 Ex. 17 at 17).

The following facts are pertinent to the remaining individual Plaintiffs' claims.

<u>Christy Courtney</u>

Plaintiff Christy Courtney was employed by Defendants as an assistant manager from June 6, 2003 to January 30, 2004, at an initial annual salary of $20,800.00.  Her pay was raised on October 15, 2003 to $26,000.00 annually.  (Doc. # 68 Ex. 6 at 21, 24, 25, 132–33; Doc. # 37; Doc. # 68 Ex. 3 ¶ 15 C &Attach. 5).  Initially she was paid in semi-monthly equal payments of $866.70, but was changed to equal bi-weekly payments of $835.85 on January 1, 2004.  These periodic payments were not reduced by holidays, sick days, or vacation. (Doc. # 68 Ex. 6 at 21, 24, 25, 132–33; Doc. # 68 Ex. 3 ¶ 15 C & Attachment 5).

5

<u>Charles Fuller</u>

Plaintiff Charles Fuller was employed by Defendants as an assistant manager from June 6, 2001 to October 10, 2001, at which time he was promoted to store manager. He was paid at an annual salary of $22,400.00 as an assistant manager in semi-monthly equal payments of $926.67. These periodic payments were not reduced for illness, holidays, or vacations. (Doc. # 37; Doc. # 68 Ex. 3 ¶ 15 F & Attach. 8).

On December 24, 2003, Fuller received a letter from DOL stating that it had determined that "you were not paid as required by the Fair Labor Standards Act." (Doc. # 68 Ex. 7). DOL "estimated" Fuller was due back wages for the period of "October 2001 to September 2002," and stated that "the Department has decided" that the case "is not appropriate for further action." (Doc. # 68 Ex. 7). The letter further advised:

> The fact that we have not obtained a voluntary payment of your back wages does not affect your private right under the Act to bring an independent suit to recover your money. The Department of Labor does not encourage nor discourage such suits. The decision is entirely up to you. However, keep in mind that recovery of back wages under this law is subject to a two year statute of limitations from the date the suit is filed.

(Doc. # 68 Ex. 7).

<u>Robert Hawkins</u>

Plaintiff Robert Hawkins was employed by Defendants as an assistant manager from January 29, 2001 to August 15, 2001, at an annual salary of $20,800.00, which was paid in semi-monthly equal payments of $866.67. These payments were not reduced for illness, holidays, or vacations. (Doc. # 37; Doc. # 68 Ex. 3 ¶ 15 G & Attach. 9). In his questionnaire submitted to Plaintiffs'

counsel, Hawkins acknowledged his date of employment as being from February 1, 2001, to September 1, 2001, and that he was paid a "salary." (Doc. # 68 Ex. 8).

Adam Latham

Plaintiff Adam Latham was employed by Defendants from August 23, 2002 to May 31, 2002, and was paid in semi-monthly equal payments of $866.70. These payments were not reduced for illness, holidays, or vacations. (Doc. # 68 Ex. 9 at 9, 45, 57–59, 116, 119–20, Dep. Exs. 1–5; Doc. # 37; Doc. # 68 Ex. 3 ¶ 15 I & Attach. 11). In the questionnaire he submitted to Plaintiffs' counsel, Latham reports that he was a "salaried" employee. (Doc. # 68 Ex. 10).

Tonya Loyd

Tonya Loyd was employed by Defendants as an assistant manager from June 22, 2002 until her resignation on June 29, 2003. (Doc. # 68 Ex. 11 at 20, 84–85, 93, Dep. Exs. 1, 2). Loyd was paid a "salary" of "twenty-six thousand" dollars annually. (Doc. # 68 Ex. 11 at 19, 88). Loyd testified she worked two to four Saturdays per month for a half day, and then sometimes she would get a half day off to compensate during the week and sometimes she would not, depending on the store and the time of the year. (Doc. # 68 Ex. 11 at 39, 45–48, 70–71, 106–107). Loyd testified she was never docked pay for illness, and that she received the same amount every pay day. (Doc. # 68 Ex. 11 at 58–60). Loyd admits that it was company policy that she only work forty hours per week. (Doc. # 68 Ex. 11 at 67–68, 72, 120, Dep. Ex. 3).

Loyd did not make a submission on Plaintiffs' Damage Summary. (Doc. # 37). However, she estimates that she worked six to seven hours of overtime per week. (Doc. # 68 Ex. 11 at 110). Loyd's pay records confirm that she was paid in equal semi-monthly payments of $1083.38. (Doc. # 68 Ex. 12).

Jesse McKinnon

Jesse McKinnon was employed by Defendants as an assistant manager from April 20, 2002 to June 11, 2002 at an annual salary of $20,800.00, which was paid in semi-monthly equal payments of $866.70 and was not reduced for illness, holidays, or vacations. (Doc. # 68 Ex. 13 103–104, 132–133, Dep. Exs. 1–2; Doc. # 37; Doc. # 68 Ex. 3 ¶ 15 K & Attach. 13).  McKinnon was never named or joined as a Plaintiff, and his name appeared for the first time on Plaintiffs' Damages Summary.  (*Compare* Doc. # 1 *with* Doc. # 37).

Cody Oxley

Plaintiff Cody Oxley was employed by Defendants as an assistant manager from February 15, 2002 to August 15, 2002.  Oxley was paid in semi-monthly equal payments of $866.70.  These payments were not reduced for illness, holidays, or vacations.  (Doc. #37; Doc. # 68 Ex. 3 ¶ 15 M & Attach. 15).  In the questionnaire submitted to Plaintiffs' counsel, Oxley states that he was paid on a salaried basis and confirms the dates of his employment.  (Doc. # 68 Ex. 14).

Vernon Shaw

Vernon Shaw was employed by Defendants as an assistant manager from December 10, 2001 to February 13, 2002.  He was paid in semi-monthly equal payments of $866.70.  (Doc. # 68 Ex. 4 at 19, 31, 59, 67–69; Doc. # 37; Doc. # 68 Ex. 3 ¶ 15 O & Attachment 17; Doc. # 68 Ex. 15).  Shaw received the same amount each pay check no matter how many hours he worked or whether he took a day off of work.  (Doc. # 68 Ex. 4 at 19, 31, 59, 67–69; Doc. # 68 Ex. 3 ¶ 15 O & Attach. 17; Doc. # 68 Ex. 15).

Ruby Smith

Plaintiff Ruby Smith was employed by Defendants as an assistant manager from April 25, 2002 to November 1, 2002.  She was paid in semi-monthly equal payments of $866.70.  These payments were not reduced for illness, holidays, or vacations.  (Doc. # 68 Ex. 16 at  56, 77, 79; Doc. # 37; Doc. # 68 Ex. 3 ¶ 15 R & Attach. 20).

Michael Spurlin

Plaintiff Michael Spurlin was employed by Defendants as an assistant manager from April 23, 2002 to July 15, 2002.  These payments were paid in semi-monthly equal payments of $866.70, and were not reduced for illness, holidays, or vacations. (Doc. # 37; Doc. # 68 Ex. 3 ¶ 15 S & Attach. 21).

## IV.    SUMMARY JUDGMENT STANDARD

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The party asking for summary judgment always bears the initial responsibility of informing a court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrate the absence of a genuine issue of material fact.  *See id.* at 323.  Once the moving party has met his burden, Rule 56(e) requires the nonmoving party to go beyond the pleadings and by his own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial.  *See id.* at 324.

The substantive law will identify which facts are material and which are irrelevant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant. *See Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *See id.* at 249.

The method used by the party moving for summary judgment to discharge its initial burden depends on whether that party bears the burden of proof on the issue at trial. *See Fitzpatrick*, 2 F.3d at 1115–17 (citing *United States v. Four Parcels of Real Property*, 941 F.2d 1428 (11th Cir. 1991) (en banc)). If the moving party bears the burden of proof at trial, then it can only meet its initial burden on summary judgment by coming forward with positive evidence demonstrating the absence of a genuine issue of material fact; *i.e.*, facts that would entitle it to a directed verdict if not controverted at trial. *See Fitzpatrick*, 2 F.3d at 1115. Once the moving party makes such a showing, the burden shifts to the non-moving party to produce significant, probative evidence demonstrating a genuine issue for trial.

If the moving party does not bear the burden of proof at trial, it can satisfy its initial burden on summary judgment in either of two ways. First, the moving party may produce affirmative evidence negating a material fact, thus demonstrating that the non-moving party will be unable to prove its case at trial. Once the moving party satisfies its burden using this method, the non-moving party must respond with positive evidence sufficient to resist a motion for directed verdict at trial.

10

The second method by which the moving party who does not bear the burden of proof at trial can satisfy its initial burden on summary judgment is to affirmatively show the absence of evidence in the record to support a judgment for the non-moving party on the issue in question.  This method requires more than a simple statement that the non-moving party cannot meet its burden at trial but does not require evidence negating the non-movant's claim; it simply requires that the movant point out to the district court that there is an absence of evidence to support the non-moving party's case.  *See Fitzpatrick*, 2 F.3d at 1115–16.  If the movant meets its initial burden by using this second method, the non-moving party may either point out to the court record evidence, overlooked or ignored by the movant, sufficient to withstand a directed verdict, or the non-moving party may come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency.  However, when responding, the non-movant can no longer rest on mere allegations, but must set forth evidence of specific facts.  *See Lewis v. Casey*, 518 U.S. 343, 358 (1996) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)).

## V.    ANALYSIS

### A.    The Store Manager Plaintiffs were Properly Classified as Exempt under FLSA and Their Claims Are Due to Be Dismissed.

Originally, this action sought overtime compensation benefits on behalf of nineteen Title Max store managers as well as twenty assistant managers.  In a related case brought by Plaintiffs' counsel prior to the instant case, Judge William M. Acker, Jr. of the Northern District of Alabama ruled that Title Max store managers were exempt from FLSA overtime compensation based on both the administrative and executive exemptions.  *Brandi Bosch v. TitleMax, Inc.*, No. 03-AR-0463-S (N.D. Ala., Aug. 25, 2004) (Doc. # 69 Ex. D).  As discussed at the October 6, 2006 hearing in this

case, the facts as related to the exemption of store managers as set out in *Bosch* are identical to the facts relating to the store managers in the instant case.  Plaintiff concedes these claims in its Response to Defendants' Motion for Summary Judgement.  (Doc. # 69 at 5–6).  Accordingly, the claims of any Plaintiff employed as a store manager are due to be dismissed.

**B.**     **Three Parties' Claims Are Due to Be Dismissed Because They Are Not Part of This Case.**

Charles Fuller, Jesse McKinnon, and Vernon Shaw are not parties to these proceedings. Neither Fuller nor McKinnon was named as a plaintiff in the original complaint and nor have they been added by amendment of the complaint.  (Doc. # 1).  Shaw was not named as an original plaintiff, nor was he added by amendment.  (Doc. # 1).  He admits to having no knowledge of the lawsuit before it was filed. (Doc. # 68 Ex. 4 at 74).  Although Shaw signed a "Consent to Join Collective Action," it bears no case number and was never filed in this case.  (Doc. # 68 Ex. 4 at 74). Thus, Fuller, McKinnon, and Shaw's claims are due to be dismissed, as they are not proper parties in this action.

**C.**     **Some Claims Are Barred by the Applicable Statue of Limitations.**

**1.**     **Calculation of Limitations Period.**

A cause of action for violation of the FLSA's overtime compensation requirements must be brought within two years of the date of the alleged violation.  29 U.S.C. §255(a).  However, each failure to pay overtime compensation constitutes a new violation of the FLSA, and a claimant may recover for any violation for which the statute of limitations period has not expired.  *Knight v.*

*Columbus, Ga.*, 19 F.3d 579, 581 (11th Cir. 1994)*; Beavers v. Am. Cast Iron Pipe Co.*, 975 F.2d 792,796 (11th Cir. 1992); *Hodgson v. Behrens Drug Co.*, 475 F.2d 1041, 1050 (5th Cir. 1973).[7]

The limitation period may be extended to three years if a defendant willfully violated the FLSA. 29 U.S.C. § 255(a). A violation of the FLSA is "willful" where the employer knew its conduct violated the statute or where it acted with reckless disregard as to whether its conduct was prohibited by the statute. *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988); *Reich v. Dep't of Conservation & Natural Res., State of Ala.*, 28 F.3d 1076, 1084 (11th Cir. 1994). "The showing needed for a finding of willful is demanding in that even if an employer acted unreasonably, *if the employer's action was not reckless* in determining its legal obligations under the FLSA, such action is not 'willful.'" *Aly v. Butts County, Ga.*, 841 F. Supp. 1199, 1201 (M.D. Ga. 1994) (emphasis in original) (citing *Duncan v. Brockway Standard, Inc.*, 1992 WL 510256 (N.D. Ga. 1992)). An employer's actions which later prove to be violative of the FLSA are not necessarily willful for purposes of the statute of limitations. *Id.* As summarized by Judge Alaimo of the District Court for the Southern District of Georgia:

> [I]f an employer's FLSA violations stem from mere negligence or from actions that are unreasonable but not 'reckless,' the employer's liability for compensatory damages is limited to no more than two years. Similarly, the mere fact that the employer knows the FLSA is 'in the picture' is not dispositive of willfulness, and a mere lack of prudence is insufficient to support a finding of willfulness. AM. JUR. 2D *Labor and Labor Relations* § 3361. The plaintiff has the burden to demonstrate reckless disregard in order to extend the statute of limitations. *See McLaughlin*, 486 U.S. at 135, 108 S.Ct. at 1682.

*Henderson v. Payless Shoes*, 2006 WL 346467, at *7 (S.D. Ga., Feb. 14, 2006) (Doc. # 68 Ex. 18).

---

[7]In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), the Eleventh Circuit Court of Appeals adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

### 2.    Defendants' Actions Were Not Willful.

#### a.    Defendants Had and Enforced Policies Limiting Assistant Managers to Forty Hours Weekly.

The Eleventh Circuit is hesitant to find "willful" behavior on the part of employers, even when presented with strong evidence of an employer's violation of the FLSA.  For example, in *Reich v. Dep't of Conservation and Natural Res., State of Ala.*, 28 F.3d 1076 (11th Cir. 1994), the United States Secretary of Labor brought an action seeking overtime compensation on behalf of Alabama conservation enforcement officers who had allegedly worked overtime without compensation during the annual deer hunting season.  It was further alleged that the failure to pay overtime compensation was willful, thereby subjecting the defendant to a three year statute of limitations.  Following trial on the issue of liability, the district court found that there had been a pattern of uncompensated overtime during the 1987 through 1990 deer seasons for which the Department had no liability because it had no actual or constructive knowledge of the overtime hours.  The Secretary appealed to the Eleventh Circuit, claiming that the Department was aware of the overtime hours and that its violations of the FLSA were willful.  28 F.3d at 1078.  On appeal, the Eleventh Circuit found substantial evidence that the Department had been fully aware of allegations that its employees were engaged in unreported overtime work and, further, that it had failed to take cognizance of records which would have disclosed that overtime work was occurring.   28 F.3d at 1079–81. Notwithstanding the fact that the court found substantial evidence that the Department failed to enforce its own policies regarding overtime work, the Eleventh Circuit refused to conclude that the Department's behavior was "willful" for purposes of determining the statute of limitations under 29

U.S.C. § 255(a).  Rejecting the Secretary's arguments regarding the imposition of a three year statute of limitations, the court noted:

> The district court found that the Department's approach to unauthorized overtime changed from a pattern of acquiescence evident in 1985 to a more vigilant attitude toward its proscription in 1987.  Although the Department should have done more to ameliorate the problem, it did at least attempt to address it, albeit ineffectively.  We cannot say on the basis of the record before us that it showed reckless disregard for the matter of whether its conduct was prohibited.  Its failure to rectify this troublesome situation can better be described as resulting from negligence rather than from willfulness.  *See McLaughlin*, 486 U.S. at 133, 108 S. Ct. at 1681, 100 L. Ed. 2d at 123 (the term "willful" is generally understood to refer to conduct that is not merely negligent).

28 F.3d at 1084.

Comparing the circumstances existing in *Reich* to those which exist here demonstrates that Defendant's actions cannot be characterized as "willful."  In *Reich*, the defendant was, at best, indifferent to the enforcement of the FLSA and its own overtime policies.  Here, it appears that Defendants were far from indifferent, but actually sought to effectively enforce FLSA requirements and its own overtime policies.  Defendants' policy regarding assistant managers unequivocally prohibited them from working in excess of forty hours weekly.  (Doc. # 68 Ex. 3 ¶ 12 & Attach. 2; Doc. # 68 Ex. 5; Doc. # 68 Ex. 11 67–68, 72, 120, Dep. Ex. 3).  Specifically, Defendants instructed its Store Managers to arrange work schedules so that their nonexempt subordinates would not be required to work in excess of forty hours in a work week and advised managers of the potential for discipline if they did not comply.  (Doc. # 68 Ex. 3 ¶ 12 & Attach. 2; Doc. # 68 Ex. 5; Doc. # 68 Ex. 11 67–68, 72, 120, Dep. Ex. 3).  The record reveals that the prohibition against overtime work did not go unmonitored, nor was the prohibition merely a pretext.  In fact, the records shows that

Defendants took affirmative steps to comply with the FLSA's overtime requirements.  (Doc. # 68 Ex. 5).  Accordingly, the two year limitations period applies.

> **b.      Four Plaintiffs' Claims are Totally Barred and Two Plaintiffs' Claims are Partially Barred by the Two-Year Statute of Limitations.**

A review of the record establishes that the claims of six Plaintiffs and the three non-parties are either entirely or partially time barred pursuant to the FLSA's two year statute of limitations.  29 U.S.C. § 255(a).  This action was filed on August 27, 2004.  (Doc. # 1).  Thus, to be actionable, any alleged violation of the FLSA must have occurred no earlier than August 27, 2002.   Plaintiffs' "Damage Summary," summarizing damages claimed by seventeen Plaintiffs and three non-parties (Charles Fuller, Jesse McKinnon, and Vernon Shaw), demonstrates that the claims of Charles Fuller, Robert Hawkins, Adam Latham, Jesse McKinnon, Cody Oxley, Vernon Shaw, and Michael Spurlin are completely time barred.  (Doc. # 37).  Further, the claims asserted by Tonya Loyd and Ruby Smith are partially time barred with respect to any claimed loss of overtime compensation which predated August 27, 2002.[8]

> **D.      The Remaining Claims Must Be Calculated by the Fluctuating Work Week Method of Overtime.**

> **1.      Background Regulations.**

FLSA requires the payment of overtime at time and a half of a nonexempt employee's regular rate for hours worked in excess of forty hours in a workweek. The term "regular rate" is a term of art and the calculation is fact dependent: "[T]he "regular rate" of pay under the [FLSA] cannot be

---

[8]Tonya Loyd's remaining claims are for the period from August 27, 2002 through June 27, 2003, the date of her resignation from the company.  Ruby Smith's remaining claims are for the period from August 27 , 2002 through November 1, 2002, the date her employment with Defendants ended.

left to a declaration by the parties as to what is to be treated as the regular rate for an employee, it must be drawn from what happens under the employment contract."  *Bay Ridge Operating Co. v. Aaron*, 334 U.S. 446, 464 (1948).

The Regulation governing how an employee's "regular rate" of pay is to be calculated explains in detail:

> The "regular rate" under the Act is a rate per hour. The Act does not require employers to compensate employees on an hourly rate basis; their earnings may be determined on a piece-rate, salary, commission, or other basis, but in such case the overtime compensation due to employees must be computed on the basis of the hourly rate derived therefrom and, therefore, it is necessary to compute the regular hourly rate of such employees during each workweek . . . .  The regular hourly rate of pay of an employee is determined by dividing his total remuneration for employment (except statutory exclusions) in any workweek by the total number of hours actually worked by him in that workweek for which such compensation was paid.

29 C.F.R. § 778.109 (1991).

In light of this, the issue is what "regular rate" is to be used in this case?  Each of Plaintiffs that has been deposed has acknowledged that he or she was paid a fixed amount semi-monthly that was unaffected by time off, vacation, or other factors related to the actual number of hours worked. (Doc. # 68 Ex. 4, Ex. 6, Ex. 9, Ex. 11, Ex. 13 & Ex. 16).  This method of payment is confirmed by the payroll records, which demonstrate that level amounts were paid each pay period.  (Doc. # 68 Ex. 3).  In addition, other personnel documents such as applications, new hire information sheets, and employee profiles state pay in annualized salary amounts.  (Doc. # 68 Ex. 3).  Further, Plaintiffs state in their Damage Summary (Doc. # 37) that their pay was based on an annual salary.  Thus, the court concludes that the parties agreed these employees were to be paid on a salaried basis.

## 2.      Regulations Relating to the Calculation of Overtime Pay.

When an employee is paid a salary intended to compensate him for all hours worked, not just for some set number of hours, the appropriate method of computing overtime is the "fluctuating workweek" method of payment as described in 29 C.F.R. § 778.114:

> An employee employed on a salary basis may have hours of work which fluctuate from week to week and the salary may be paid him pursuant to an understanding with his employer that he will receive such fixed amount as straight time pay for whatever hours he is called upon to work in a workweek, whether few or many.  Where there is a clear mutual understanding of the parties that the fixed salary is compensation (apart from overtime premiums) for the hours worked each workweek, whatever their number, rather than for working 40 hours or some other fixed weekly work period, such a salary arrangement is permitted by the [FLSA] if the amount of the salary is sufficient to provide compensation to the employee at a rate not less than the applicable minimum wage rate for every hour worked in those workweeks in which the number of hours he works is greatest, and if he receives extra compensation, in addition to such salary, for all overtime hours worked at a rate not less than one-half his regular rate of pay.  Since the salary in such a situation is intended to compensate the employee at straight time rates for whatever hours are worked in the workweek, the regular rate of the employee will vary from week to week and is determined by dividing the number of hours worked in the workweek into the amount of the salary to obtain the applicable hourly rate for the week.  Payment for overtime hours at one-half such rate in addition to the salary satisfies the overtime pay requirement because such hours have already been compensated at the straight time regular rate, under the salary arrangement.

29 C.F.R. § 778.114(a) (1991).

In simpler terms, under the fluctuating workweek method, the salary is intended to be the employee's straight time compensation for all hours worked in the workweek, regardless of number. *Id.*  The salary is then divided by the number of hours actually worked in the workweek to determine the employee's regular rate.  *Id.*; *see also* 29 C.F.R. § 778.114(b) (1991) (calculating examples under this method).  The employee is due time and a half of this rate for overtime hours, but since the

salary itself is the straight time component of even the overtime hours, all that remains to be paid for the overtime hours is the additional half time.  29 C.F.R. § 778.114(a) (1991).

Enforcement personnel of the U.S. Department of Labor's Wage & Hour Division are guided in their investigations by the Field Operations Handbook, Chapter 32 of which addresses overtime compensation:

> If an employee is given a stipulated salary with the understanding that it constitutes straight time pay for all hours he works, and if his hours of work fluctuate from week to week, his regular rate of pay ordinarily will vary from week to week in accordance with the number of hours worked each week. The regular rate, of course, cannot be less than the applicable minimum wage. Since straight time compensation has already been paid, such an employee must receive additional overtime compensation for each overtime hour in a particular [workweek] computed at not less than ½ the regular rate obtained by dividing the weekly salary by the number of hours worked in that w/w period.

(Doc. # 68 Ex. 19).

Even in the absence of an explicit agreement or understanding (which is undoubtedly present here as evidenced by Plaintiffs' own acknowledgment of how they were paid), courts have held that a course of conduct between the parties where employees continue to work and receive a fixed salary for varying numbers of hours per week establishes the conditions necessary for the use of the fluctuating workweek method, and thus such lack of explicit understanding does not preclude summary judgment.  *See, e.g.*, *Garcia v. Port Royale Trading Co., Inc.*, 198 F. App'x 845, 846 (11th Cir. 2006); *Griffin v. Wake County*, 142 F.3d 712, 716–17 (4th Cir. 1998) (clear mutual understanding may be established by consistent administration of a payment method, "after the fact verbal contentions" that plaintiffs did not have a clear mutual understanding after eight years of employment was contradicted by their "recei[ving] a regular lesson—in the form of their paychecks—about how the fluctuating workweek plan operates"); *Mayhew v. Wells*, 125 F.3d 216,

19

219 (4th Cir. 1997) ("the existence of [a clear and mutual] understanding may be based on the implied terms of one's employment agreement if it is clear from the employee's actions that he or she understands the payment plan in spite of after-the-fact verbal contentions otherwise") (internal citation omitted). The Eleventh Circuit has found that an employee's pay stubs would be sufficient to establish the requisite mutual understanding necessary to establish a "clear understanding" between an employer and an employee regarding the use of the fluctuating workweek method. *Davis v. Friendly Express, Inc.*, 2003 WL 21488682, at *1 (11th. Cir. 2003) (citing *Griffin*, 142 F.3d at 716–17). The *Davis* court further noted that "the employee bears the burden of proving non-compliance with the fluctuating work week method." *Davis*, 2003 WL 21488682, at *3 n. 4.

After reviewing Plaintiffs' submissions and deposition testimony, and Defendants' payroll records (which have not been controverted by Plaintiffs), the court concludes there is substantial evidence (which is not disputed) that Plaintiffs understood that their salary was to cover all hours worked, regardless of the particular amount of hours in any one workweek. Thus, the fluctuating work week method of calculating overtime pay will apply to Plaintiffs with remaining claims (*i.e.*, Tonya Loyd, Christy Courtney, and Ruby Smith).

## VI.    CONCLUSION

For the reasons set forth above, Defendants' Revised Motion for Summary Judgment or Partial Summary Judgment (Doc. # 68) is due to be granted. After summary judgment, Plaintiffs Tonya Loyd, Christy Courtney, and Ruby Smith having remaining claims for unpaid overtime worked during the statutory period (post August 27, 2002 to the end of their terms of employment). As discussed above, any damages for these claims will be calculated using the fluctuating work week

method of calculating overtime.  This case will be set for a pretrial and trial on these remaining claims.

      **DONE** and **ORDERED** this _____13th_____ day of March, 2007.

                    R. DAVID PROCTOR
                    UNITED STATES DISTRICT JUDGE